ALMAGER v. SAN ANTONIO & A. P. RY. CO. (No. 6028.)

(Court of Civil Appeals of Texas. San Antonio. June 28, 1919. Rehearing Denied Oct. 15, 1919.)

1. APPEAL AND ERROR ⬤═212 — ASSIGNMENT AS TO PEREMPTORY INSTRUCTIONS REVIEWABLE WITHOUT OBJECTION BELOW.

Assignments of error as to the giving of peremptory instruction are entitled to consideration, though objection to the giving of it was not made.

2. RAILROADS ⬤═400(8)—PRECAUTIONS AS TO PERSON ON TRACK QUESTION FOR JURY.

Evidence, in action for injury to a person on the track, held to make a question for the jury whether, after discovering him in a position of peril, the operatives of the engine by use of the means at hand could have avoided injuring him.

Appeal from District Court, Caldwell County.

Action by Pedro Almager against the San Antonio & Aransas Pass Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Monroe & Richards, of Lockhart, for appellant.

Boyle, Ezell, Houston & Grover, of San Antonio, for appellee.

MOURSUND, J. Appellant sued appellee for damages on account of personal injuries sustained by being run down by appellee's passenger train. Appellant relied on failure to give warning signals and discovered peril.

Appellee answered by general demurrer, general denial, and special denials; also, that plaintiff was a trespasser, and that he was guilty of contributory negligence in that he was drunk, and such condition prevented him from getting off of the track.

The court instructed a verdict for defendant. No objection was made to such instruction.

[1] The case has been held by us to await the decision by the Supreme Court of the case of Walker v. Haley, 214 S. W. 295. That case was decided on June 25th, and the court held it unnecessary to object to the giving of a peremptory instruction. Appellant's as-signments of error are therefore entitled to be considered.

[2] There was no issue of negligence in failing to keep a lookout such as could have been the proximate cause of the injuries, for the fireman admitted that he saw plaintiff when 900 or 1,000 feet away from him and commenced ringing the bell, while the engineer admitted that he saw him on the track when about 450 feet from him. We conclude, however, that the evidence presented the issue for the jury whether after discovering plaintiff in a position of peril the operatives of the engine, by the use of the means at hand, could have avoided injuring him. The engineer and fireman testified the train was running at the rate of 30 miles an hour when the engineer undertook to stop it. The conductor testified that its maximum speed on the run was 30 miles per hour. This indicates that, although the fireman was ringing the bell and the engineer saw plaintiff on the track, he did not begin to slow up until, as testified to by them, they were a little less than 360 feet from him. They both testified that the train was stopped at about 364 feet from the point where the fireman called to the engineer that the man on the track was drunk. They do not explain how they arrived at this conclusion. The conductor admitted that the end of the train was opposite where plaintiff was lying when it stopped. The train consisted of two coaches, a baggage car and a small engine. It backed up until plaintiff was opposite the door of the baggage car. This distance was estimated at from 30 to 50 yards. Taking the lowest estimate, and adding the length of half the baggage car and that of the engine, it appears that the train ran over 100 feet in addition to the distance between the point where the brakes were thrown on and the point where plaintiff was struck by the engine; that is, over 100 feet further than nearly 360 feet. The engineer testified he did everything he could to stop the train, and that it was an unusual stop; that it must have jarred the passengers. Several passengers testified there was nothing unusual in the stop; not the least jarring. Passengers estimated the speed of the train at 15 to 20 miles an hour. There was no direct evidence as to the distance in which a train such as that in question could be stopped at a speed of 15 or 20 miles an hour. The fireman testified that 364 feet was the shortest distance in which the train could be safely stopped when running at a speed of 30 miles an hour. In view of the testimony that it was running at a rate of only 15 or 20 miles an hour, and of the fact that the engineer and fireman both admitted that the stop was undertaken at a distance of nearly 360 feet from plaintiff, and of the evidence that there was no jarring nor anything unusual concerning the stop, the

jury could have found that the train could have been safely stopped before reaching plaintiff.

There is also evidence from which the jury could have found that the whistle was not sounded until after the train was nearly upon plaintiff.

The judgment is reversed, and the cause remanded.