NATIONAL LABOR RELATIONS BOARD
v. NORTH AMERICAN AVIATION, Inc.
No. 10313.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1943.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and David Findling and Harley Moorhead, Jr., Attys., National Labor Relations Board, all of Washington, D. C., and Maurice J. Nicoson, Reginal Atty., National Labor Relations Board, of Los Angeles, Cal., for petitioner.

J. Stuart Neary and Gibson, Dunn & Crutcher, all of Los Angeles, Cal. (Ira C. Powers, of Los Angeles, Cal., of counsel), for respondent.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The National Labor Relations Board (the Board) issued an order directed to the North American Aviation, Inc., (the Company), to cease and desist certain practices and to take certain affirmative action. The Company has not complied, and the Board is here asking for an order of enforcement.

The Company and a labor union, properly authorized as the bargaining agent of the Company's employees, entered into and put into effect a comprehensive agreement in regard to their relations as employer and employees. This agreement encompassed the subject of employee grievances and provided in detail for a system of handling grievances from their presentation to their disposal by agreement and for a procedure of arbitration if agreement could not be reached.

Something like a month after this collective agreement became effective, the Company issued to its employees and has continued to issue to new employees a notice in which employees are informed that they may present any grievance to it and press the same to agreement, and, if no agreement is reached, to a decision by arbitration, and a complete procedure therefor is prescribed.

The complaint in this proceeding is based upon the union's claim that the maintenance and operation of the Company's scheme for the treatment of grievances is in violation of the provisions in the collective agreement treating of that subject. And, since such subject is a proper one for collective agreement, these acts of the Company constitute unfair labor practices.

But the Company defends, by citing a section of the Labor Act, which, as it claims, gives the employee the right to come to it with his grievances notwithstanding the broad language of the agreement. And, so it further claims, this right is specifically preserved by a provision of the collective agreement itself. It then argues, and we think to a sound conclusion, that this right carries with it the right, if not the duty, of the Company to consider and dispose of the

grievance.[1] It will be necessary to notice the section of the Labor Act together with the provision of the agreement to which reference is made.

§ 9(a) of the Labor Act, 29 U.S.C.A. § 159(a), is as follows: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

The portion of the collective agreement referred to is as follows: "No provision of this Article [covering the subject of grievances] shall be interpreted to prevent any employees or group of employees from presenting grievances to the [Company] management in accordance with the provisions of Section 9(a) of the National Labor Relations Act."

If the proviso contained in the quoted section of the Labor Act and specifically affirmed as effective in the collective agreement encompasses adjustment of, and if necessary the prosecution of, any kind of grievance to a decision or through arbitration, then plainly the statute makes it the Company's right, if not its duty, to hear and determine any grievance presented to it, and its doing so could not constitute an unfair labor practice.

If the proviso carries a right as extensive as above suggested, and a specific method of handling grievances is provided for by the collective agreement, we have two methods of handling grievances each operative under a separate entity. In one, the method of treatment is prescribed by the Company in its notice. In the other, it is prescribed in the collective agreement. We think the two methods of handling grievances have been legally provided for here and that the terms and conditions of the collective agreement are binding upon both entities in their treatment of grievances.

It is argued by the Board that the proviso authorizes the Company to handle only those items of grievance which do not come within the scope of the agreement—a sort of catch-all for the small out-of-mind grievances. But the fallacy of this interpretation of the proviso is apparent, for if only grievances outside the scope of the agreement remain for consideration by virtue of the proviso, the proviso could be nullified by drawing the agreement so as to cover the whole field of grievances. It will be noticed that the *instant agreement by express terms* purports to cover "any dispute arising regarding the interpretation or application of any of the terms of this agreement or any other request or grievance * * *."

It may be argued that the right given by the proviso may be waived by any beneficiary of this right. We do not pass upon this problem for it is not in this case. Even if it might be held that those employees *comprising the majority would be bound if* the agreement provided for the waiving of such right, it would not affect this proceeding, for the agreement itself specifically reaffirms the provisions of the proviso, and this goes to the rights of all employees.[2]

It is contended by the Board that the dual handling of grievances can but lead to confusion and would tend to nullify the beneficial effect of the collective agreement. Of course, the Board's argument is that a statute should be construed so as to support its purpose in the fullest possible degree. But it may be that the law makers in blazing a course for collective bargaining also had in mind the preservation of the in-

---

[1] According to the New Standard Dictionary the word "present" used in the sense of *to present* means, "To offer for judicial action or inquiry."

According to Webster's New International Dictionary, 2nd Edition, the word "present" used in the sense of *to present* means, "To lay before, or submit to, a person or body for consideration or action."

[2] It is well to appreciate that the proviso of § 9(a) is on its face a right preserved to the employee. No doubt the reason for this is that under the scheme of collective bargaining a bare majority controls the whole body of employees and that, in this circumstance, the right should be preserved, to the individual (or a group) to go to his employer with any grievance he may harbor notwithstanding any provision in the collective agreement.

It may also be that the Congress intended, by this proviso, to assert the policy that individuals or a group of individuals in spite of any agreement to the contrary may possess the right of registering their grievances with the employer.

900

dividual right of protest as well as the benefits that logically flow from an understanding between employer and employee.

There may be another answer to this argument. The Company offered to prove that but two grievances have been handled under the Company's procedure, while upward of eight hundred have been handled under the procedure prescribed by the agreement. The proof was rejected, but it is stated in the Board's opinion that this could make no difference. However, if this be true, it would seem that the resulting confusion has not actually materialized.

We appreciate the fact that there is great opportunity for conflict in the dual handling of grievances, but we can see no legal way of our bettering the situation. We are constrained to add that the agreement between employer and employee is yet to be drawn which will work without a minimum of friction through misunderstanding which must be solved through co-operation. It is a phantasy that labor peace can be promoted through a permanent armistice between employer and employee.

The petition of the Board is denied and its order is set aside.